IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 3T OIL AND GAS SERVICES, LLC | § | |
| | § | |
| V. | § | A-18-CV-131-LY |
| | § | |
| JPMORGAN CHASE BANK, N.A. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 7); Plaintiff's Response (Dkt. No. 8); Defendant's Reply (Dkt. No. 9); and Plaintiff's Sur-Reply (Dkt. No. 12). The District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on the motion on August 29, 2018.

## I. GENERAL BACKGROUND

3T Oil and Gas Services, LLC procures and distributes oil and gas equipment for multi-national corporations. JPMorgan Chase Bank, N.A. is a foreign financial institution incorporated under the laws of New York and is registered to do business in Texas. This lawsuit is based 3T's wire transfer of $186,686 (the "Wired Funds") to an account at JPMC. Specifically, in connection with the purchase of oilfield equipment, 3T received instructions from its vendor, DME, Inc., to wire a down payment for the equipment to DME's account at JPMC. Shortly thereafter, 3T received from what it believed to be DME but which later turned out to be a third party impersonating DME, different wiring instructions. On Friday, February 12, 2016, before it became aware that the instructions were fraudulent, 3T used the new instructions to wire $186,686 from its

account at the United Bank of Africa, through Standard Chartered Bank, to the account at JPMC that 3T believed belonged to DME.

Two days later—a Sunday—DME contacted 3T to inform 3T that it believed 3T had been given fraudulent wiring instructions and that 3T should cancel the wire. The next day, a Monday (and a bank holiday), 3T contacted the FBI to cancel the wire transfer. The FBI informed 3T that it could not direct JPMC to put a hold on the wire transfer and directed 3T to contact JPMC directly. 3T then called JPMC and informed the customer service representative and a member of JPMC's Global Investigations Fraud Unit that it believed it had been induced to wire funds to a fraudulent account at JPMC's bank. 3T requested that JPMC hold the Wired Funds until the bank reopened on Tuesday, February 16, 2016, to allow time for the matter to be investigated. At the close of this conversation, 3T alleges that JPMC stated that (1) the Wired Funds had arrived in the account at Defendant's bank; (2) the account had been "flagged;" and (3) due to the "flagged" status, the Wired Funds could not be moved out of JPMC's bank. 3T then called JPMC's Global Investigations Fraud Unit and spoke to a Fraud Specialist. The Fraud Specialist confirmed that an alert had been sent out and that the Wired Funds would not be moved out of the bank. 3T also contacted the originating bank for the wire transfer and requested that the bank recall the wire transfer, which it did at 2:27 p.m. on that same Tuesday.

On Wednesday, February 17, 2016, 3T met with a banker at JPMC's branch bank near 3T's office. The banker told 3T that the JPMC account 3T had wired the funds to did not belong to DME, but instead belonged to V.O.I. Enterprises, LLC, a company not known to 3T. More alarmingly, the banker also informed 3T that JPMC had allowed V.O.I. to withdraw $131,092.82 of the Wired Funds, and JPMC no longer had any control over those funds. 3T subsequently filed a criminal

complaint with the FBI and with the Travis County's Sheriff's Office. Eventually, JPMC recovered the remaining $55,593.18 of the original funds, and returned those to 3T. The remaining $131,092.82 was never recovered.

Accordingly, 3T filed this lawsuit against JPMC, alleging that JPMC made negligent misrepresentations to 3T that the Wired Funds would not leave the bank, and 3T relied on those false representations to its detriment. 3T alleges that "[b]ut for Defendant's representations that the Wired Funds would not be released, and would remain in Defendant's bank pending investigation, Plaintiff would have pursued an emergency temporary restraining order preventing the release of the Wired Funds as provided by NY CLS UCC § 4-A-503 and TEX. BUS. & COM. CODE § 4A.503." Dkt. No. 3 at 7. 3T contends that JPMC's false representations and numerous reconfirmations misled 3T to believe that a court order was not needed to prevent Defendant from releasing its funds. 3T seeks $131,092.92 in actual damages as well as exemplary damages.

JPMC moves to dismiss under to Rule 12(b)(6) and to strike, arguing: (1) the negligent misrepresentation claim is supplanted by Chapter 4A of the Texas Business and Commerce Code, and (2) the federal Bank Secrecy Act ("BSA") does not create a private right of action.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim

3

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. ANALYSIS

**A.  Preemption**

As stated above, JPMC argues that 3T's lawsuit should be dismissed because 3T's negligent misrepresentation claim is preempted by Chapter 4A of the Texas Business and Commerce Code. Specifically, JPMC argues that Chapter 4A provides the exclusive rights and remedies governing wire transfers, and because 3T's lawsuit arises from the wire transfer at issue, the negligent misrepresentation claim is preempted. The Court disagrees.

Chapter 4A of the Texas Business and Commerce Code, TEX. BUS. & COM. CODE § 4A.101, *et seq.,* incorporates the Uniform Commercial Code[1] and governs wire transfers between a bank and its customers. *Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 133 (Tex. App. 2015, no. pet. h.). Chapter 4A was "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation *covered by particular provisions of the Article*." TEX. BUS. & COM. CODE § 4A.102 cmt. (emphasis added). "Consequently, resort to

---

[1] See TEX. BUS. & COM. CODE § 1.101 ("This title [the Texas Business and Commercial Code] may be cited as the Uniform Commercial Code."); *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 376 (5th Cir. 2003).

principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent with those stated in this Article.*" *Id.* (emphasis added). Courts, however, "may resort to principles of law or equity outside of Article 4A" as long as those principles do not "create rights, duties and liabilities inconsistent with" those contained in Article 4A. *Cmty. Bank, FSB v. Stevens Fin. Corp.*, 966 F. Supp. 775, 780 (N.D. Ind. 1997). Accordingly, "where the circumstances differ from the situations outlined in Art. 4A, Art. 4A is not the 'exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer.'" *Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012) (citing *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1273 (11th Cir. 2003)).[2] "Thus, a plaintiff is only restrained from bringing non-Article 4A claims when those claims 'create rights, duties and liabilities *inconsistent* with those stated in this article." *Id.*[3] Accordingly, the Court must determine whether 3T's negligent misrepresentation claim falls within the provisions of Chapter 4A.

In determining whether a claim is preempted under Chapter 4A, courts look to whether "additional facts or conduct potentially lying outside the scope of Art. 4A are at issue." *Consorcio*, 2012 WL 13019678 at * 3. If the conduct at issue or factual circumstances of the claim are "not addressed squarely by the provisions of the article, courts are more likely to find that preemption

---

[2] See also, *Centre-Point Merchant Bank Ltd. v. American Exp. Bank Ltd.*, 913 F. Supp. 202, 206 (S.D.N.Y. 1996) (rejecting defendant's argument that New York legislature intended to replace the common law entirely with regard to wire transfers); *Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 808 (Cal. 2007) ("This is not to say that the Uniform Commercial Code necessarily displaces all common law actions based on all activities surrounding funds transfers.").

[3] See also, *Regions Bank*, 345 F.3d at 1275 ( "Therefore, the only restraint on a plaintiff is that 'resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article.'").

5

does not apply." *Id.* Thus, in *Consorcio*, 2012 WL 13019678 at * 3, the plaintiff owed monies under a note to Hoss Equipment Nevada, and when making a payment on the note, mistakenly wired $100,000 to Wachovia instead of to Hoss's bank. Hoss's affiliate, Hoss Equipment Co., Inc. was in debt to Wachovia, and had a written agreement with Wachovia that any deposits to HEC's account would be "swept" by Wachovia and applied to HEC's Wachovia debt. The plaintiff realized its mistake within minutes of making the wire transfer, and requested that Wachovia refund the $100,000. Wachovia refused, and instead applied the $100,000 payment against HEC's debt. The plaintiff then sued Wachovia, alleging common law claims of conversion, money had and received, restitution, and a claim under the Texas Theft Liability Act. As JPMC has done here, the bank argued that Consorcio's claims were preempted by Chapter 4A. The district court rejected this argument, and concluded that Chapter 4A did not preempt the claims since the bank's refusal to reverse its set off was a separate transaction from the wire transfer and Chapter 4A did not squarely address *those* actions. *Id.* Similarly, in *Regions Bank*, 345 F.3d at 1276, the Eleventh Circuit held that Article 4A did not preempt a state law claim where the beneficiary bank accepted funds when it should have known that the funds were fraudulently obtained since Article 4A was silent with regard to such claims. *Id.*

3T's negligent misrepresentation claim in this case is similarly not based on the wire transfer itself, or on any claim that JPMC mishandled the wire transfer, but rather is based on representations made by JPMC *after* the wire transfer was completed. Specifically, 3T alleges that after the wire transfer was completed, JPMC informed 3T that the funds had been flagged and that JPMC would not permit the funds to be moved out of the bank. 3T contends that it relied on these representations and did not seek a court order to prevent JPMC from releasing the funds. None of these allegations

6

fall within the provisions of Chapter 4A. Accordingly, 3T's negligent misrepresentation claim is not preempted by Chapter 4A.

As noted earlier, a number of courts have reached similar conclusions in similar cases. For example, in *Holcomb v. Wells Fargo Bank, N.A.*, 155 Cal. App. 4th 490 (2007), as modified (Oct. 22, 2007), the plaintiff made a deposit with his bank and the bank's branch manager assured him that there would be no hold on the funds, thereby allowing the plaintiff to immediately write checks against the deposit. Plaintiff later discovered that the bank had improperly placed a hold on his account and failed to honor several checks, causing damage to his credit and finances. The plaintiff sued the bank for its negligent misrepresentations. The court held the plaintiff had alleged a viable negligent misrepresentation claim, finding that the UCC did not shield the bank from the claim, because:

> Holcomb's negligent misrepresentation claim, however, does not take issue with Wells Fargo's right to charge back, but with statements made by Wells Fargo's branch manager, Viles, which induced Holcomb to write checks against his $10,000 deposit. There is nothing in the code prohibiting a claim based on a depositor's detrimental reliance on a bank employee's incorrect statements.
>
> ***
>
> Thus, even though the CUCC furnished Wells Fargo with an absolute right to charge back the check upon U.S. Bank's dishonor, it does not shield Wells Fargo from damages due to its branch manager's alleged negligent misrepresentations regarding the check's status.

*Id.* at 499. Similarly, in *Barrett v. JP Morgan Chase Bank*, 2016 WL 3523046, at * 7 (S.D. Cal. June 27, 2016), the district court rejected JPMC's argument that Article 4A precluded plaintiff's tort claims "especially because the alleged misconduct involves actions taken by Defendant's employees

7

prior to and after the wire transfer."[4] Based on this case law, the Court rejects JPMC's preemption argument. As the Eleventh Circuit noted in *Regions Bank*, permitting banks "to use Article 4A as a shield for fraudulent activity" was not the intent of the drafters of Article 4A. 345 F.3d at 1276.

### B. Bank Secrecy Act

JPMC also argues that any suggestion that JPMC owed a legal duty to 3T under the federal Bank Secrecy Act ("BSA") fails since the BSA does not provide for a private right of action. It asks the Court to strike any claim made pursuant to the BSA. At the hearing, 3T stated unequivocally, on the record, that it is not pursuing any claim under the BSA. Further, the Court does not read the Amended Complaint as attempting to state a claim under the BSA. Instead, the Amended Complaint rather clearly sets out a single claim, the negligent misrepresentation claim just discussed. Accordingly, the Court recommends that the District Court **DENY** the Motion to Strike.

### IV. RECOMMENDATION

In light of the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint (Dkt. No. 7) be **DENIED**.

### V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

---

[4]Several other courts have reached similar conclusions. *See, e.g., Regions Bank*, 345 F.3d at 1276 (holding that Article 4A did not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally); *Centre-Point Merchant,* 913 F.Supp. at 207 (holding that breach of contract and negligence claim for failing to follow rollover instructions did not relate to funds transfers and thus were not preempted by Article 4A); *Schlegel v. Bank of America, N.A.*, 271 Va. 542, 555 (Va. 2006) (holding that common law claims for conversion and breach of contract arising from the second bank transaction, i.e., the freezing of the funds instead of returning the funds was not a situation covered by any provision of Article 4A).

8

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of October, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE